Judge Marshall
delivered the Opinion of the Court.
In August, 1830, a contract was entered into between these parties, by which Waters undertook to construct two sections of the road leading from Maysville to Lexington,. to be graded and covered with stone, to the depth of nine inches, according to the specification made in the contract; for which the company agreed to pay him’thirteen dollars sixty three cents for each pole in length, that the sections should measure when completed; that is to say, at the end of every sixty days, winter excepted, they were to pay such sum as the superintendent of the road might direct, not exceeding three fourths of the estimated value of the work done? until the first six inches of stone should be put on the road, when the'y should pay any sum so directed to be paid, not exceeding nine tenths of the value of the work done; and upon the final completion of the whole, with a cover of stone of nine inches, they were to pay promptly, upon the order of the superintendent, the remainder of the whole price, at thirteen dollars and sixty three cents per pole. They also agreed to pay such price as the superintendent might think just, for such extra work as should be ordered by him, and done by Waters.
Among various other stipulations of the contract, the following only seem to have a special bearing on the questions involved in the present controversy. The road was to be graded according to notes of ascents and descents, &c. furnished by the superintendent; and the bed of the road was to be rounded, and ready for the stone, by the first day of May, 1832,-and rolled, inspect*63ed and passed, before stone is laid upon it. The first six inches of stone to be laid arid rolled, to the satisfaction of the superintendent, by the 15th day of June, 1832. The last three inches of stone to .be -laid when and how the superintendent shoidd direct, or permit: the whole work to be done in a workman-like manner, to the satisfaction of the superintendent; to whose directions, as to the time and manner of construction, Waters bound himself to conform. It was further agreed, that if the work should not progress in a proper manner, and with sufficient speed, the superintendent might take any measures- he should think best for insuring its proper progress, without any interference on the part of Waters. And finally it was agreed that the superintendent for the time being, who should not be a stockholder or contractor, should be, and he was thereby constituted, sole umpire and arbitrator between said Waters and the company, in all matters in dispute between them, relative to the contract; whose award was to be final. And that if either party should fail to perform his part of the contract, the said superintendent .might declare the contract null and void, and assess damages'against the delinquent, which nullification and .assessment should be binding and final.
ThebUl.
In October, 1833, Waters filed this bill, alleging that he had, some time before, completed the construction of the road in substantial conformity with the contract, .and to the satisfaction, as he supposed, of the superintendent, on whose order he had-, from time to time, during the progress of the work, received various partial .payments from the company, leaving a large balance due, which, according to the terms of the contract, was. .payable, on the order of the superintendent, when the work was completed. But that John S. Williams, the .superintendent for the time being, had, in pursuance, as he pretended, of the provision constituting him sole umpire and arbitrator, made an award, on the 9th of April, 1833, by which he directed one thousand two hundred and thirty one dollars fifty cents to be charged against the complainant, and deducted from the contract price of his work; and that afterwards, on the 24th of July following, he changed the award, so as to charge *64him with the additional sum of two hundred and thirty four dollars seventy five cents, to be deducted as above. Which award he alleges to be in the hands of the company, and exhibits extracts from it, which had been furnished to him by one of the directors. He impeaches the award on the ground (1) of fraud, partiality and bias in the arbitrator; (2) of gross mistake' of law and fact, arising from ignorance or negligence; (3) of want of notice to him, and of any knowledge on his part, that the superintendent was acting as arbitrator’, so that he had no opportunity of presenting his claims or contesting the facts; and (4) on the ground that the award was made before any dispute had actually arisen, and without the request of either party. It is further alleged, that the superintendent, after permitting the complainant to go on to the completion of the work, without giving any ground to suppose that he was dissatisfied with it in any of its progressive stages, now refuses to give an order on the company for the balance due him; and he prays that an account be taken of the payments made; that the company be decreed to pay him what is justly due, and for general relief.
Defence, by demurrer, pleas & answer: their con ■tents.
Replications.
The defendants demurred, and filed two pleas and an answer. The first plea relies upon the agreement that the superintendent shall be sole umpire, &c., and avers that there had been no submission of the matters alleged by the complainant when the bill was filed, although the defendant had offered to submit them. The second plea sets up a formal award by the arbitrator, after the suit was brought. And the answer, besides reiterating both of these matters, with greater particularity of detail, denies all allegations impeaching the character and conduct of the superintendent, and alleges various failures and deficiencies in the work undertaken by the complainant, justifying the deductions made from his demand, and the refusal of payment by the company.
In reply to each of the pleas, and to the answer, the complainant re-asserts the matters stated ill his bill, and states further, in reply to the second plea, that the superintendent, at the time, and in the same matter, in which he was acting as arbitrator, acted also as the agent of *65the defendants, in going to Maryland and there taking a deposition for them, which was read in evidence before him as arbitrator. The replication to the answer states the same fact, and alleges also that the award stated in the bill, was made at the request of the defendants.
Decree of the circuit court, and appeal.
The grounds of demurrer and the matter of the pleas being again stated and relied on in the answer, the latter only, need be considered.
Two questions the decision of which will decide this case.
An award, not made under a rule of a court of common law, may bimpeached by bill in equity—
But here it is alleged that there was, in fact, no award, and the eompt’s remedy is adequate and plain, at law.
Upon final hearing, the Court, without having made any formal disposition of the demtirrer or pleas, annulled ' the award of the superintendent, and decreed the turnpike company to pay to the complainant the sum of one thousand two hundred and fifty five dollars sixty eight cent's — being the balance remaining, after deducting the payments previously made, from the aggregate of the contract price of the whole work undertaken by him, and the admitted price of the extra work done by direction of the superintendent. From this decree the turnpike company has appealed.
We do not deem it necessary to discuss separately, the various questions which might have been made upon the demurrer and pleas, if they had been taken up and disposed of distinctly, in the Circuit Court. The questions of jurisdiction, and of the equity of the complainant’s case are substantially the same upon the answer and proof as upon the demurrer. And as, in determining thém, the effect of the facts stated in the pleas, will also be involved, the whole case will be embraced in the two following questions: first. Has the Court of Equity jurisdiction upon the facts stated in the bill? And, second, if it has, to what relief is the complainant entitled, upon the pleadings and proof?
It is well settled that the appropriate mode of impeaching an award (except where it is made under a rule of a common law court) is by suit in chancery. 1 Bacon’s Mr. 239; 3 Monroe, 439, Southard, fyc. vs. Steele;) and, as the causes of impeachment .alleged in this bill, are clearly sufficient if true, the only grounds on which the jurisdiction of the Court is seriously questioned on the case presented by the bill, are, (1) that the exhibits referred to therein, do not in fact amount to an award, and (2) that there being no award, the legal remedy is plain, and the bill contains nothing which calls for, or authorizes, the interposition of a court of equity.
Parts of Reports, made to the Co’s directors,by their superintendent — who was also arbitrator, — which the complainant considers as an award against him; the proceedings of the directors upon the Reports, adopting them, & directing the money due to the contractor to be retained until he should remedy the defects in the work, stated in ■the reports.
The exhibits referred to, as constituting an award, are extracts from two reports of the dates mentioned in the bills, made by the superintendent of the road to the board of directors, together, with the orders of the hoard in relation to them. In the first of these, extracts which purport to contain so much of the report then made, as relates to the case of Waters, the superintendent, after directing credits in favor of Waters for extra work to the value of one hundred and eighty dollars ninety five cents, directs him to be charged as follows;—
“To 450 poles of the first cover damaged, at $1 50,......$675 00
To 90 rods necessary to make the proper thickness of the last cover, at $3 50, - 343 00
To 61 rods necessary to make up deficiencies in grade, at $3 50, - 213 50
$1231 50
The last item is said to be an estimate which will be ascertained more accurately by survey, if required. And, in the second report referred to, which seems to be confined to the case of the complainant, the superintendent, after stating that, at the request of some of the directors, he had made a survey for the purpose of ascertaining the quantity of stone necessary Jo make up the defir ciencies of grade, and that he had found it to be ninety nine and a half rods, corrects the charges directed in the former report, by setting down that item at ninety nine and a half rods, instead of sixty one rods, and its cost three hundred and forty eight dollars, instead of two hundred and thirteen dollars fifty cents. And stating that the other items, as formerly charged, were laid with great care, and that he has no doubt of their correctness, he suggests that Waters should be ordered to make up the deficiencies with stone, and that settlement with him be refused, until this is satisfactorily done.
The first of these reports is denominated by the board, in an order made upon its reception, “a report assessing damages against the company and against contractors.” And their treasurer is directed to settle with the several *67contractors agreeably thereto. On the reception of the ' second report, they ordered their treasurer to retain the aggregate amount of the charges, until Waters should ’ “complete his contract agreeably to said report,” and that he be furnished with a copy of the report and .order.
A Turnpike Co, and a party who undertook a part of their covenanted that, in case of any dispute about the work, it should be left to and decided by the Co’s superintendent:-tho’ it wa3 the duty of the superintendent (as such) to report facts (upon his own observation and upon information,) to his employers, it was not necessary for him to give, orto form, any opinion upon the matters in dispute, until they were referred to him, as arbitrator, by both parties, or by one, after notice to the other, & had been by him, impartially considered. The agreement does not imply a waiver of any objection to the arbitrator which might resultfrom his forming and delivering an opinion prematurely and improperly.
*67These reports, though not in the form of awards, seem to contain the deliberate opinion, and to express the decided judgment of their author: and the board, to which they were addressed, seems to have considered them as containing such a decision upon the matters to which they refer, as authorized its own final action in regard to them. The directors do not seem to have looked to any further action of the superintendent in the formal character of arbitrator; nor does it appear from the reports themselves, that any thing was left for ascertainment or adjudication in that character. The superintendent undertakes to assess damages against the company, and against’contractors. He does this, as he says, with great care, and to his own entire satisfaction, and reports the result to his employers, with suggestions as to the best mode of enforcing it. And it is not pretended that Waters had any notice of the proceeding until the final order of the board for enforcing the decision, had been adopted.
In ordinary cases, if an arbitrator or umpire should, upon an ex parte investigation of which one of the parties had no notice, make up his opinion in writing, as to any matter included in the submission, and furnish it to the other party, with suggestions as to the mode of carrying it into effect, it would be considered, either as an award, though an illegal' one, or at least, as a disqualification of the arbitrator from making a valid award on the same matter; that is to say, it would of itself vitiate such subsequent award, and constitute sufficient ground ■ for setting it aside. Kyd on Awards, 348.
But it is argued that it was the duty of the superintendent, as such, to report to the board of directors all matters relating to the road, which it was important for them to know; and the inference suggested is, that be- . ' ... °° ¿ no mg constituted umpire m view, as must be supposed, oi *68his character and duties as superintendent, no act of duty belonging to the latter character should be confounded with, or considered as superseding, a power or duty pertaining to the former — and that, therefore, his reports now in question, should neither be considered as an award of the arbitrator, nor as disqualifying him from making an award afterwards.
There is, certainly, great plausibility in this argument; but the justness of the conclusion cannot be admitted. ■ For whatever may have been the rights and duties of the superintendent, considered as the mere agent of the company, it must be supposed that, when both parties united in conferring upon him the higher character of arbitrator or judge between them, they intended and expected, that his rights and duties as agent should be so far controlled by those pertaining to his character as chosen judge, as that, in exercising the former, he should not lose sight of the latter — and such is the fair interpi’etation and legal effect of the contract. The parties have shown that they did not intend to submit themselves to an interested arbitrator; and the law will not, upon mere inference, imply that they bound themselves to submit to one who might by any means render himself, in judgment of law, incapable of doing justice between them. The express waiver of objection on the ground that the arbitrator is the agent of one of the parties, as superintendent, is no waiver of other objections, not necessarily implied in that character, and therefore, not within view of the parties.— Conceding, then, what does not appear, that the company had no other proper source of information, respecting the road, and the progress and manner of work upon it, but by the communications of a single agent, styled the superintendent, and that it was his duty, in that character, to state facts within his own knowledge, and even to state his information as to other facts, and to suggest questions affecting the rights and interests of the parties — it does not follow, and cannot be conceded, that it was a necessary part of his duty, in that character alone, to decide any question of fact or of right between the parties. Since, therefore, there 'was no ne*69eessary conflict, in this respect, between his duties as agent, and as arbitrator, there is no ground for inferring from the union of the two characters in the same person, that it was within the contemplation of either of the parties, that he might first decide as superintendent, and then as arbitrator; or that either party intended to waive, or should be adjudged to have deprived himself of the benefit of, the principle which disqualifies a chosen arbitrator from acting as such, after having made up and declared an ex parte decision upon the matter submitted to him. We are of opinion, therefore, that, if the reports in question do not amount to an award, yet as they clearly express the decision of the arbitrator upon the matters contained in them, made upon ex parte, and communicated as his deliberate judgment, to the party in whose favor it was made, they did in effect disqualify him from making a valid award as to the same matter.
Any annunciation, by an arbitrator, of his deliberate opinion and judgment upon the matter submitted to him may be considered as an award. But if made without notice to the parties, or one of them, it will be illegal and not binding on them; and either of them may have the award set aside in chancery, where the whole controver sy will then be settled. For the arbitrator, by his ex parte decision, will be disqualified from again acting'as such in the case. So where (as above) a Turnpike Company and one of their contractors covenanted to refer any dispute that might arise between them, to the umpirage of the'Company's superintendant, and he, in his reports to them, after the work was done, designated certain alleged defects in it — stating the amount at which he estimated the damages, and advised the detention of that sum till the alleged defects were made good: it is held that the contractor might consider ¿hese reports as amounting to an ex parte award, against which he is entitled to relief .in equity; and, if they do not amount to an ' award in legal contemplation, he is entitled-to be relieved from the obligation to submit the matters in dispute to the superintendent who had thus disqualified himself. And the court being in possession of the case will investigate the whole subject, and, by its decree, will settle the whole controversy.
But further: if the reports in question had been made upon due notice to Waters, and after proper investigation of the questions involved, and had expressed the decision of the superintendent in the same form in which they now express it, there can scarcely be a doubt that it would-have been, to every substantial purpose, an award by which Waters would have been as much bound, as if it had been drawn out in the most formal manner. For although the agreement uses the words “arbitrator” and “award,” it prescribes neither any mode of proceeding by the arbitrator, ¡nor any form of expressing his award, and it seems probable that nothing more was intended or expected, than that the judgment *70Gf the superintendent, fairly made up, should be con-elusive of the question decided. Why then might not 'Waters consider the judgment expressed in these reports, as an award, though an exporte one, and therefore invalid? By making a question as to the rights of the parties under the contract, the superintendent, being the agent of one of them, does in effect raise a dispute which, unless one of the parties yield, must be decided by him as arbitrator. As agent, he might raise the question, but only as arbitrator could he decide it. When, therefore, he undertakes to determine finally upon the rights of the parties, as he seems to have done in these reports, he may well be understood as assuming the character and powers by which alone his act would be authorized, and as having decided in virtue of his character as arbitrator. And it would seem that an explicit decision, so made, and which disposes finally of the matter involved, is in substance an award, whatever may be its form.
We do not, however, decide conclusively that these reports constitute an award, and should be so regarded by the Court. It is not necessary to decide this point. For if they do constitute an award, the jurisdiction of the Court, to set it aside for the causes alleged, and to do further what justice may require in relation to the subject of the award, is undoubted. If they do not amount to an award, themthey disqualify the superintendent from making an award; and on the allegations of the bill, the complainant is entitled to be relieved from his agreement to submit to his future award, and from the requisition of the contract that he shall have the order of the superintendent to entitle him to demand payment from the company. ' And on these grounds, and because the legal remedy by action on the agreement, if not en- • tirely precluded, is greatly embarrassed by the circumstances referred to, we think a court' of equity pray take jurisdiction of the case, and compel the defendants to do what justice and good conscience require, without the award or order of the superintendent. In either view of the reports, the award set up in the plea and answer, is of no avail to the turnpike company.
Consideration of the facts, as they appear in the record, and conclusion, that there was .a substantial compliance with the contract, on the part of the comp't; and the decree allowing him the full stipulated compensation, approved.
It sufficiently appears from the evidence, that the reports referred to in the bill, were in fact made without notice to Waters, and without his knowledge. The re- . ports at large, which were introduced and used on the trial, show upon their face, that' they were intended to express the deliberate opinion and decided judgment of the superintendent, and it is manifest that they were made up, to a considerable extent, on ■ information gathered from others. Other circumstances are also made out in proof, tending to show that, before and after the dates of these reports, there was some degree of prejudice in the mind of the superintendent, towards Waters. But as the fact of the arbitrator’s having made and declared an ex parte decision of the case, together with his withholding the order for payment, is, according to the views before expressed, sufficient to establish the jurisdiction of the Court, neither those other circumstances, -nor their probable effect upon the opinion of the arbitrator, need be further adverted to.
We proceed, therefore, to enquire into the justice of the complainant’s claim to have full pay for his work, as appearing upon the pleadings and proof. That Waters made the road, apparently .complete, for the distance agreed on, and that it was opened by the company for the nse of the public, and a tollgate erected thereon, and toll received for the passage of travellers and vehicles of burthen, as soon as the same things were done, or could have been done, on other adjacent sections of the road, is not denied, and is sufficiently established by the evidence.
It is also proved that, taking into view the nature of the ground over which Waters’ part of the road was made, and the greater amount of travel and transportation upon it, in consequence of its immediate vicinity to the city of Lexington, it stood the travel of the first win- , ter as well,-and in the opinion of several witnesses, better, than the adjacent sections. And it is not proved that the cost of repairing the injuries done to this portion of the road, by the first winter’s travel, exceeded the cost of repairing other adjacent portions, allowance being made for the same circumstances.
The articles between a Turnpike Company and contractor, provided that the work should be do neto the satisfaction of the Co’s superintendent and agents: held that the con tractor, as well, as the company, had a right- to look to this provision in the progress of the work; and the fact that, those agents superintended the work almost constantly, during its progress, and, apparently satisfied with it, permitted the contractor to go on, from stage to stage, without objection, is at -least prima fa-the evidence of faithful performance-especially as to the earlier stages of the work.
*72It further appears that various payments were made, during the progress of the work, which, according to the terms of the contract and the duties of the company’s agents, must have been made upon inspection of the work done. And this circumstance taken in connection with 'the absolute control of the superintendent over the work and the contractors, and the total absence of any proof that he ever thought it proper, during the progress of the work, to exercise his extraordinary powers, in order to secure its proper execution, either as to time or manner, gives sufficient ground for inferring that, both as to time and manner of execution, the work proceeded, under all the circumstances, to his satisfaction. This inference is strengthened by the proof that such particular directions as were given by the superintendent or other agents of the company, in relation to any portion of the work, while in progress, were complied with; that objections made by them, were obviated, and deficiencies pointed out by them, supplied; and that general expressions of satisfaction with Waters in this respect, were used by the assistant superintendent. It is also proved that, in some stages of the work, it was subject to the daily inspection of an agent of the company, and that the finishing of the grade so as to receive the covering of stone, was also placed under his immediate supervision.
Indeed, looking to the terms of the contract, which, so far as they -bear upon this subject, have been already recited, and to the relations of the several parties to the work which was to be done, it is obvious that it was intended that the whole work, in its various stages, should be done under the direction and inspection of the superintendent, or of such agents as he had confidence in, as well as to his satisfaction; and that he would neither permit any thing to pass as done, and as fitted to receive work of a different character, unless he was satisfied that it was sufficient; nor suffer any thing tobe done at a season unfavorable for it. The contractors were responsible for doing the work according to his directions and to his satisfaction; it was expected of him to take care that it should be done in such manner, and at such *73times, as should secure the durability of the road, and promote the interest of the company and of the pub-lie. To enable him to do this, he was invested with absolute control as to the time and manner of doing the work, and over the contractors themselves. And although these powers may have been conferred especially for the benefit of the company, it cannot be doubted that the contractor had also an interest in them, and had a right to look to their due exercise and to the performance of the duty plainly implied from them, as not only a guide in.the execution of the work, but as a safe reliance in passing from one stage of it to another.
We are therefore of opinion, that the general facts and inferences which have been stated, must be deemed at least prima facie sufficient to establish the fact, that the road was constructed in substantial conformity with the contract, and to support the claim of Waters to full payment therefor, according to the contract price.
But it is contended that such failures and deficiencies, in regard to the time and manner of executing the work, have been proved in the cause, and such damages have been shown to have arisen therefrom, as entitle the company to a reduction from the contract price, and justified them in withholding the balance claimed by Waters.
And although there is certainly great force in the argument that, after permitting the contractor to complete the work without intimating any material dissatisfaction, it is too late for the first time to allege, as ground for a claim to heavy damages, deficiencies in the early stages of the work, which, if they had existed, might then have been supplied with little cost, yet as the just effect of these circumstances may be rather to disprove, or to throw a doubt over the existénce,or the importance, of the alleged deficiencies, and to restrict the damages to be claimed for them, if they did exist, than to bar all enquiry into them — -we shall proceed to investigate the grounds on which the company claims damages, or a reduction of price, giving due effect to the circumstances which have been adverted to, as sufficient, prima facie, to establish the complainant’s right.
The contract for constructing a road, required that the first coat of stone should 4ie laid -on by such a day: if, for want of punctuality in complying with this part of the contract, the proprietors lose the use of the road for a time, they are entitled to damages. But, if .there is no stipulation that they may use the road before it is completed, and, after the first coat of stono is on, they do use it, whereby it is injured, they are not entitled to damages for that injury, even tho’ the road might have borne the use without injury, if the stone-had been put on by the stipulated time.
*74The particulars of the claim to damages for failures on the part of Waters, are set forth in the report of the superintendent, exhibited in the bill, except that the amount of some of the items' is reduced.
The first item is for damage done to the first cover of the road, by travelling on it before the whole coyer of nine inches was laid on. This is claimed on the ground that the first cover of six inches of stone was not put on the road by the 15th of June, as stipulated by the contract. No damage is claimed, under this head, on account of the mere postponement of the company’s use of the road, and no such claim would be justified by the facts. But it is alleged that, in consequence of the first six inches of stone not having been laid on by the 15th of June, the road was in a less suitable condition to sustain the travel during the succeeding fall and winter, and therefore damages are claimed to the estimated amount of the injury actually done by the travel.
It appears in proof that the first cover of six inches was not completed until about the last of July; but it may be inferred that a portion of it was done by the 15th of June, and it does not appear how much then remained. Of course, if there were no other difficulty on this item, it must be restricted to that part of the road which was not covered by the 15th of June. And the proof does not show what injury was done to that part of the road, as distinct from the other, except that the complainant proves that, at one of the places last finished, and which is understood to have been much injured by the winter’s travel, a stone quarry was kept open by the direction of the company’s agent, until other parts of the road were graded and covered. For the delay and the injury consequent upon it, he certainly was not liable to damages. And the proof does not make such discrimination as to show for what damages he is liable under this head, if indeed he is liable for any. As to which point a few observations will suffice.
If, in consequence of the failure to lay the first cover of stone by the time agreed on, the company had been postponed in its profitable use of the road, the right to damages for such postponement would seem to be cer*75tain. But this is not shown to have been the case, and' no damages are claimed on that ground. And, as there is no stipulation in the contract, 'that the company might use the road, or open it for public use, before it should be finished, and no stipuiation on the part of the contract- or to make good any injury which it might sustain from such use, it is difficult to establish the right to damages for such-injury produced by the voluntary act of the company, as a consequence of the mere fáilure of the contract- or in point of time. If the.road with six inches of stone put on by the first Of August, was not sufficient to sustain the travel of the ensuing winter, it was in the power of the company to require the additional cover of three inches to be put on in time for the winter. This would seem to have been the true remedy, and if, in pursuing it, they had been delayed in the/eceipt of toll, their right to damages would have been clear.
Besides, in this case, the proof does not show that the injury was attributable to the delay, but-, rather the contrary.
But passing by this*view of the subject, it must be admitted that, unless it appears that the injury to the road was the .actual consequence of the failure now in question, there can be no right to compensation for the injury, in consequence of that failure. And on this point we.think there is a deficiency, of proof. The superindent, in his report above referred to, and in his deposition, attributes the injury done to this failure. But in another report, made by him on the 25th day of December, 1832, relating to the same subject, he says “ the lateness of laying the stone is the sole cause of the damage, for in no instance has the lower layer been damaged, to any perceivable degree, where it was laid as early as the first of August or September, and very rarely when we were able to travel down as early as the first of October.” Thus showing clearly, that, in his opinion, at that time, the difference in the time of laying the first cover, between the fifteenth of June and the first of August, was immaterial as to any effect upon the fitness of the road to sustain the travel of the following winter, or its susceptibility of injury therefrom. It is also to be remarked, that the assistant superintendent does not attribute the injury to the failure to íay the first cover by the fifteenth of June, but to the failure to lay the last *76cover of three inches by the end of the year 1832. And under all these circumstances, we are of opinion, with-0ut resorting to the probability that the failure as to the tjme pUtt¡ng on grst C0Ver, may have had the acquiescence and approbation of the company’s agents at the time, that Waters cannot, upon the proof in the record, be held liable on account of that failure.
With regard to the last cover of three inches, the failure to lay which during the year 1832, is supposed by the witness last referred to, to have been the cause of the injury done by the travel of that winter — the contract provides, that it should be put on when and how the superintendent might direct or permit. There is no proof of any requisition or direction as to the time in this case. And although a permission may be implied from the fact that it was commenced some time in the fall, and although it seems that it might have been finished sooner than it was after it was commenced, there is not only no proof of any attempt to hasten it on the part of the company or their agents, but it may be implied that any indications which may have been given from that quarter, were rather calculated to produce delay than expedition; inasmuch as the assistant superintendent seems to have entertained the opinion that the first cover would be sufficient, and to have informed the contractor that there was no hurry for the last cover, and that the company could not pay for it if it was finished. If, therefore, any injury followed from failing to put down the last cover during the year 1832, and it is probable there did, it cannot justly be attributed to a breach of Waters’ contract- in that respect.
The next claim of damages which will be noticed, is the charge for as much stone as would be necessary to make up an alleged deficiency in the grade of the road. On this item it is to be remarked, that the general circumstances and considerations before referred to, tend, with peculiar force, to disprove this claim. In the first place, they render it- extremely improbable that there was, in fact, any defect of grade when the first coat of rock was put on. And, in the second place, they show the injustice of claiming that those defects, if any there *77were, after being passed over without notice at a time when they might have been remedied, by placing or displacing a few cubic yards of earth, with little labor or cost, should be made good in a different and much more costly material,' and at much greater expense. But . there is, in fact, no sufficient affirmative proof that the defects in the grade which were observed in the winter of 1832-3, after the road had been travelled for four or .five months, and which appear, from the evidence to have increased up to the last survey in 1834, did, in fact, exist in the summer of 1832, when the grading was finished, and the first cover of rock put upon the road.— The fair inference from the proof, is, that the grade was then satisfactory to the agent of the company appointed to inspect it; and certainly Waters was not liable, under his contract, for the subsequent settling of the embankments — an incident to which they are proved to be subject. This claim, therefore, must be rejected.
The only remaining subject to be noticed, is the charge for an alleged deficiency in the quantity of stone put on for the last cover, which was to be three inches in depth. So far as this deficiency actually existed, Waters was certainly bound to make it good, either by putting on the requisite quantity, or submitting to a proportional abatement of his demand; and this last he should have been compelled to do, by the decree, if the fact and quantum of deficiency were proved. But from the fact that this covering, by direction of the superintendents, was placed, not equably over the whole breadth of the road, but along the centre to the extent of three fourths of the whole breadth, and was to be of such depth that, when equally diffused over the whole, it should be three inches on an average, and from the fact that, while it was being laid on, the road was in constant use for the passage of travellers and wagons, by which the stone might be, and doubtless was, displaced, it would seem to be extremely difficult, if not impossible, at any indefinite period after the stone was put down, to ascertain, by any partial measurement, or by general observation, the exact - quantity which had *78been laid, on a surface of two miles and a half in length. The positive testimony of one or two witnesses, who state that they actually saw nearly every r°d and several others who were present nearly every day when some portion of it was laid, and who-, by mei’ely looking at the boards used as guides for the depth of the stone, could easily perceive any deficiency, is, under such.circumstances, entitled to great weight. Several witnesses, with these opportunities, testify that they always saw the boards well filled, and it is proved that Waters gave express orders that they should always be filled. It also appears, that, while this part of the work was going on, it was inspected, generally every day, by an agent of the Company, employed for that purpose; and that, although he and Waters had, on one occasion, a quarrel and fight about the work or the hands engaged in it, his directions were followed, and such deficiencies as he pointed out were supplied, and that he frequently measured the depth of the stone, and expressed general satisfaction with the work. On the other hand, the superintendent and assistant superintendent, of whom the latter saw this part of the road perhaps less than once a week, and the former not nearly so often, depose, in part upon their own observation and partial measurements, and in part from the information given by the agent above referred to, whose deposition is not taken in the cause, that there was a deficiency in the quantity of this cover, which they estimate at about ninety rods, worth about $343. But, although it is not doubted that, at the places measured by them, the last covering was not as thick as the average required, yet this is not sufficient, in opposition to the other evidence on the subject, to prove, either the fact of a general deficiency, or its quantum. And their opinion and estimate, so far as they are founded on the information of a third person, is not competent evidence-While, therefore, it is not absolutely certain that there was no deficiency whatever in the quantity of stone in the last cover, we feel satisfied that there js no sufficient proof to.justify the deduction claimed on that account by the appellants. If there was any deficiency worthy *79«of estimation in the adjustment-of this contract, the •proof does not ascertain it. There was no error, therefore, in rejecting this claim. And, upon the whole case —it appearing that the work undertaken by-Waters was done substantially in conformity with the contract; that the portion of the road máde by him, stood as well or better than other’parts; and that the price at which he undertook it was considered low on all sides — we are •of opinion, that no injustice has been done to the appellants by the decree of the Circuit Court; and the same •is therefore affirmed.